IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PROGRESSIVE CASUALTY INSURANCE COMPANY, INC. <br><br> PLAINTIFF, <br><br> v. <br><br> PEOPLES COMMUNITY BANK, INC., ET. AL. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 2:05CV1064-C |

**DEFENDANTS PEOPLES COMMUNITY BANK, INC.,
LARRY PITCHFORD AND JERRY GULLEDGE'S MOTION TO DISMISS,
OR IN THE ALTERNATIVE, MOTION TO ABSTAIN**

Defendants Peoples Community Bank, Inc. ("Peoples" or the "Bank")[1], Larry Pitchford and Jerry Gulledge, (collectively, the "PCB Defendants") without waiver of any other defense to this action or claim against any party, move the Court to Dismiss this declaratory judgment action or, in the alternative, to abstain from exercising jurisdiction over this action in deference to the proceedings pending in the Barbour County, Alabama Circuit Court. As grounds, the PCB Defendants submit the following:

**I.    THE UNDERLYING FACTS AND PROCEEDINGS**

1.    The present case arose from proceedings initiated in the Barbour County, Alabama Circuit Court by Harris Leveson ("Leveson") and Harris Pest and Termite Control, Inc. ("Harris") against the PCB Defendants styled *Harris Leveson, et al. v. Peoples Community Bank, Inc., et al.*,

---

[1] Peoples Community Bank is now known as PeoplesSouth Bank. However, for purposes of clarity, the Bank will be referred to in this Motion as Peoples Community Bank.

Case No. CV-04-67 (the "State Court Case"). The State Court Case was premised upon the alleged wrongful conduct of the PCB Defendants in a series of transactions involving Leveson and Harris while they were customers of the Bank.

2. Progressive Casualty Insurance Company, Inc. had issued a "claims made" Directors and Officers (D&O) Liability Insurance Policy (the "Policy") to Peoples that was in effect from March 26, 2003 to March 26, 2004 that indemnified the PCB Defendants or some of the PCB Defendants for the claims asserted in the State Court Case. (Complaint). The PCB Defendants notified Progressive of the State Court Case in accordance with the terms and conditions of the Policy and communicated with Progressive during the State Court Case. Prior to trial, Leveson and Harris demanded that the PCB Defendants settle the State Court Case within policy limits, and the PCB Defendants demanded that Progressive settle the case by payment of the limits of coverage available under the Policy, less Retention. Progessive never authorized the PCB Defendants to settle the case within Policy limits.

3. Judge L. Bernard Smithart tried the State Court Case non-jury for three (3) days beginning on August 22, 2005. He signed and entered a final judgment on October 7, 2005 awarding $2,500,000 in compensatory damages and $1,000,000 in punitive damages to Leveson and Harris against the PCB Defendants.

4. Leveson and Harris instituted ancillary garnishment proceedings on October 7, 2005 in the State Court Case naming Progressive as Garnishee and naming the PCB Defendants. Progressive and the PCB Defendants were served with copies of the Process of Garnishment. *See* Process of Garnishment filed upon Progressive attached hereto as Exhibit "1" and Certified Envelopes that contained Process of Garnishment served upon PCB Defendants attached hereto as

Exhibit "2". Progressive filed the present declaratory judgment action on November 3, 2005 and filed a Motion to Dismiss the Process of Garnishment in the State Court Case on or about November 4, 2005. *See* Motion to Dismiss attached hereto as Exhibit "3".[2] In its Motion to Dismiss filed in the State Court Case, Progressive argued, among other things, that "the Policy either does not cover or expressly excludes the claims as well as the bases for the Court's award in this case . . . ." (*See* Progressive's Motion to Dismiss, pp. 2-4). On November 22, 2005, Judge Smithart signed and entered a Conditional Judgment in the garnishment proceedings. See Conditional Judgment Against Garnishee and Notice to Garnishee attached hereto as Exhibit "4".

## II.   ARGUMENT

### A.   Abstention Standard

The present declaratory judgment action was brought pursuant to 28 U.S.C. § 2201, *et seq.* (the "Declaratory Judgment Act"). Congress provided in the Declaratory Judgment Act that federal courts "**may** declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). This permissive, rather than mandatory, language has compelled the United States Supreme Court to note that a district court has discretion to stay or dismiss a declaratory judgment action before trial or after all arguments have drawn to a close. *Employer's Reinsurance Corp. v. Dillon*, 179 F.Supp.2d 1371, 1373 (M.D. Ala. 2001); *Wilton*, 515

---

[2] The PCB Defendants have removed Exhibit "A" to Progressive's Motion to Dismiss (The Directors's and Officers (D&O) Liability Insurance Policy and related documents) to avoid cluttering the record. Exhibit "A" to Progressive's Motion to Dismiss is identical to Exhibit "A" to its Complaint.

3

U.S. at 288.

Laying the foundation for the current analysis in a case factually similar to the present one, the United States Supreme Court warned in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942) that:

> "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of state court litigation should be avoided."

*See Brillhart*, 316 U.S. at 495; s*ee also Employer's Reinsurance Corp.*, 179 F.Supp.2d at 1373 (noting that the Eleventh Circuit considers the existence of ongoing state court proceedings as "the most potent factor" in determining how to proceed in a declaratory judgment action). *Brillhart* was initiated as a federal declaratory judgment action filed by a re-insurer against a judgment creditor to determine coverage. *Brillhart*, 316 U.S. at 492. The tortfeasor/insured and primary insurer had filed liquidation proceedings and bankruptcy relieving themselves of the state court judgment. The re-insurer filed the declaratory judgment action after the judgment creditor had filed state court garnishment proceedings against it but before the re-insurer was named in the garnishment proceedings.[3] *Brillhart*, 316 U.S. at 492-93. The district court dismissed the declaratory judgment without considering whether the claims raised by the re-insurer could be asserted in the garnishment proceeding. *Brillhart*, 316 U.S. at 493-94. The 10th Circuit reversed finding that the district court had abused its discretion. *Brillhart*, 316 U.S. at 494. In reversing the 10th Circuit and remanding the case to the district court, the Supreme Court instructed the district court to "properly exercise its

---

[3] As discussed below, Progressive similarly filed this declaratory judgment action one (1) day prior to filing its Motion to Dismiss in the garnishment proceedings.

discretion" in determining whether to entertain the declaratory judgment action. *Brillhart*, 316 U.S. at 498. The Court refused to announce a "comprehensive enumeration" of what factors in other cases a court should consider in deciding whether to entertain a declaratory judgment action. *Brillhart*, 316 U.S. at 495.[4]

Ten years ago, the Supreme Court again addressed the "discretionary" standard set forth in *Brillhart* when it decided *Wilton*. After *Brillhart*, the Supreme Court had adopted the "exceptional circumstances" test in *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976) and *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983). Under the "exceptional circumstances" test, district courts "must point to 'exceptional circumstances' to justify staying or dismissing federal proceedings." *Wilton*, 515 U.S. at 281. The Circuits were split in utilizing the "discretionary" standard and the "exceptional circumstances" test. *Wilton*, 515 U.S. at 281-82. In *Wilton*, the insured, the Hill Group, was involved in a dispute over ownership of oil and gas properties and demanded that its insurer, London Underwriters, provide them with coverage. *Wilton*, 515 U.S. at 279. London Underwriters refused, and a $100 million verdict was entered against the Hill Group in Texas state court. *Wilton*, 515 U.S. at 279. London Underwriters then filed a declaratory judgment action against the Hill Group in federal court to determine coverage issues. *Wilton*, 515 U.S. at 279-80. The declaratory judgment action was voluntarily dismissed but later re-filed in federal court a month before the Hill Group filed suit against London Underwriters in state

---

[4] The PCB Defendants will not review those factors that the Court set out in *Brillhart* and in *Wilton* here, because it appears that each of those factors (as well as others) are included in the 11th Circuit's factors adopted in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005), which are discussed in depth below.

court.[5] *Wilton*, 515 U.S. at 280. The Hill Group moved to dismiss or stay the federal action in deference to the state proceedings. *Wilton*, 515 U.S. at 280. The district court stayed the federal action to avoid piecemeal litigation and to stop London Underwriters from forum shopping, since the state action involved coverage issues. *Wilton*, 515 U.S. at 280. The 5th Circuit affirmed in accordance with its "discretionary" standard citing avoidance of duplicative proceedings and forum shopping. *Wilton*, 515 U.S. at 281. In reaffirming *Brillhart*, the Court rejected a proposed de novo review and rejected the "execeptional circumstances" test concluding that the district court should be reviewed for abuse of discretion. *Wilton*, 515 U.S. at 288-90. The Court affirmed the 5th Circuit's finding that the district court had acted within its bounds where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court. *Wilton*, 515 U.S. at 290.

### B.    Eleventh Circuit Abstention Factors

The Eleventh Circuit recently expounded upon *Brillhart* and *Wilton* in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005). In *Ameritas Variable Life Ins. Co.*, Mr. Roach held a life insurance policy that had been assumed by the insurer, Ameritas Variable Life Insurance Company ("Ameritas"). *Ameritas Variable Life Ins. Co.*, 411 F.3d at 1329. After Mr. Roach committed suicide, Mrs. Roach, the policy beneficiary, filed a claim with Ameritas, and Ameritas filed a federal declaratory judgment action against her. *Ameritas Variable Life Ins. Co.*, 411 F.3d at 1329-30. Over one month later, Mrs. Roach filed a state court action against Ameritas, the insurance

---

[5] The declaratory judgment action was re-filed after the Hill Group gave notice that it intended to pursue state court proceedings against London Underwriters. Notice was given pursuant to an agreement entered by the parties when they dismissed the original declaratory judgment action.

6

agency and the agent who had sold the policy, based upon breach of contract and negligence, and she also filed a motion to dismiss the federal action. *Ameritas Variable Life Ins. Co.*, 411 F.3d at 1330. Judge Proctor of the Northern District of Alabama dismissed the federal action in deference to the state court proceedings. *Ameritas Variable Life Ins. Co.*, 411 F.3d at 1330. The Eleventh Circuit repeated the Supreme Court's warnings in *Brillhart* related to interfering with state court proceedings noting that those warnings "should be heeded." *Ameritas Variable Life Ins. Co.*, 411 F.3d at 1330-32. Affirming Judge Proctor, the 11th Circuit: (1) noted that the state court action encompassed the entire controversy including all parties and claims and (2) agreed with Judge Proctor that "to allow the declaratory action to proceed would amount to the unnecessary and inappropriate 'gratuitous interference' with the more encompassing and currently pending state court action that was contemplated by the Supreme Court in *Brillhart* and *Wilton*." *Ameritas Variable Life Ins. Co.*, 411 F.3d at 1332. The Court set forth the following factors that district courts should consider in deciding whether to entertain a federal declaratory judgment action when state court proceedings are ongoing:

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"--that is, [a] to provide an arena for a race for *res judicata* or [b] to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Ameritas Variable Life Ins. Co.*, 411 F.3d at 1331.

### 1.   Strength of State Interest

The State of Alabama undoubtedly has a strong interest in the orderly disposition of lawsuits between its own citizens. That interest extends to determining whether its citizens are covered by policies of insurance that they have purchased in the event of an adverse judgment as in the present case and extends to the interpretation and enforcement of its own garnishment laws.

### 2.   Settlement of the Controversy

The garnishment action pending in state court is a better forum for settling all issues between the parties. Progressive has raised coverage issues and issues concerning what insurer provides coverage in the garnishment action. *See United States Fidelity and Guar. Co. v. Algernon-Blair, Inc.*, 705 F.Supp. 1507, 1515 (M.D. Ala. 1988) (noting that "the relevant determinant is not whether the state court litigation involves the identical issues *in form* as the federal action, but rather whether the substance of the federally pleaded issues will be resolved in state court"); *see also Liberty Mut. Ins. Co. v. Wheelwright Trucking Co., Inc.*, 851 So.2d 466, 471 (Ala. 2002) (stating that federal court stayed declaratory judgment action in deference to Barbour County Circuit Court garnisment action

and that state court determined that sole issue in garnishment proceedings was coverage determination). Moreover, under the garnishment statutes, the PCB Defendants have a right to contest the garnishment answer of Progressive. *See* Ala. Code §6-6-459 (1975); *see also Wheelwright Trucking Co. v. Dorsey Trailers, Inc.*, 158 F.Supp.2d 1298, 1301 (M.D. Ala. 2001) (noting that garnishment action against insurer was brought "under Sections 6-6-370 *et seq.*, 27-23-1 and 27-23-2 of the Alabama Code"). Finally, if this Court determines that Progressive's policy provides indemnity, then Leveson and Harris could have to take additional action in the State Court Case to collect their judgment from Progressive. These matters could be more comprehensively dispensed with in the garnishment proceedings. This Court cannot dispose of the entire controversy, and a more orderly and comprehensive disposition of this action can be accomplished in state court.

### 3.  Purpose of Declaratory Judgment Action

Progressive's intent in filing the present action is clear. Progressive could have filed the declaratory judgment action before the judgment was entered. Having failed to do so, Progressive now attempts to forum shop the coverage issues from state court to federal court. There are no federally pleaded issues and no other compelling reasons to file this action in federal court. This leads directly to the next factor.

### 4.  Procedural Fencing

In filing the present action, Progressive is doing nothing more than engaging in procedural fencing by trying to realign the parties. Leveson and Harris named the PCB Defendants in the garnishment action raising diversity problems for Progressive. Progessive was also faced with Judge

De Ment's previous observations that "[t]he diversity statute is strictly construed" and "[t]he removeability of a garnishment is an open question." *See Wheelwright Trucking Co.*, 158 F.Supp.2d at 1300-01. Moreover, Progressive is also attempting to obtain a ruling from this Court on the coverage issues and raise that ruling as a *res judicata* defense in the state court garnishment. In an attempt to further this goal, Progressive filed the present action on November 3, 2005 and then filed its Motion to Dismiss in state court immediately thereafter thereby attempting to raise coverage issues in federal court first. However, the garnishment proceeding, and those coverage issues were already pending, and *Brillhart, Wilton* and *Ameritas Variable Life Ins. Co.* establish that the order of filing or time of addition of a party is irrelevant when deference should be given to state courts.

### 5. Friction Between Courts and Encroachment on State Jurisdiction

*Brillhart* established that federal interference in state court jurisdiction is "vexatious". In the present case, the state court has been exercising its jurisdiction over the State Court Case since it was filed in February, 2004, and it has already asserted its jurisdiction over the garnishment proceedings by entering a Conditional Judgment against Progressive. Progressive has also raised coverage issues in its Motion to Dismiss the garnishment. (Complaint, p. 7). Inherent in Progressive's Complaint is a request that this Court, in essence, tell Judge Smithart that the garnishment proceeding that he is overseeing, and that he has entered a conditional judgment in, is defective. (*See* Complaint, p. 7, ¶ 30). These issues will be fleshed out in the State Court Case in due course. Pursuant to *Brillhart* and its progeny, this Court should not engage in vexatious interference with the Barbour County Circuit Court's jurisdiction by considering the coverage issues pending there or by interfering with the "orderly and comprehensive disposition" of the state court

garnishment proceedings.

### 6.  Better Alternative Remedy

The garnishment proceedings are the better alternative remedy, and they were pending prior to the filing of the declaratory judgment action. The garnishment proceedings include all parties and will result in a more complete remedy.

### 7.  Importance of Underlying Factual Issues

Among others, Progressive raises the following coverage issues in its Complaint: it cites exclusions for punitive damages, mental anguish, defamation and fraudulent acts; cites an "Other Insurance or Indemnification" Clause; contends that it provides no coverage for the Bank and cites an Allocation Clause requiring proper allocation of losses between the insurer, insured persons, company and other parties. (Complaint, pp. 4-7). The underlying factual issues, tried *ore tenus* before Judge Smithart, will play a role in every coverage issue raised by Progressive.

### 8.  Evaluation of Factual Issues

Judge Smithart is undoubtedly familiar with the procedural and factual niceties of this case. His familiarity with the case will be invaluable in considering the coverage issues raised by Progressive. On the other hand, this Court will necessarily have to second guess Judge Smithart in considering the factual issues, particularly where the award of damages and allocation of loss is concerned. In fact, Progressive concedes as much in its Motion to Dismiss.

### 9. State Law and Federal Common or Statutory Law

A cursory review of the Complaint reveals that this action involves primarily matters of state law contract interpretation and interpretation, application and enforcement of Alabama garnishment statutes. The state court is well equipped to handle the interpretation of its own laws. *See Employer's Reinsurance Corp.*, 179 F. Supp. 2d at 1374 (noting that "[a] federal court has no particular expertise in matters of contract interpretation that is lacking in its state counterparts"). Finally, if an issue does exists concerning whether Alabama Code § 12-23-1, *et seq.* applies to Progressive, that issue will have to be resolved by the Alabama Supreme Court and would be better decided through the state appeals process rather than through a certified question from the 11th Circuit. The foregoing factors clearly dictate that this Court should not exercise its jurisdiction over the issues asserted in the declaratory judgment action.

### C. Other Abstention Authority

On October 24, 2005, Magistrate Judge Cassady of the Southern District of Alabama issued an opinion in *St. Paul Fire & Marine Ins. Co. v. Johnson Homes of Meridian, Inc.*, 2005 WL 2739141 (S.D.Ala. 2005).[6] In *St. Paul Fire & Marine Ins. Co.*, the judgment creditor, Michelle Hampton, had obtained an arbitration award against the insured, Johnson Mobile Homes, Inc. ("Johnson Homes"), that was affirmed by the Choctaw County Circuit Court. *St. Paul Fire & Marine Ins. Co.*, 2005 WL 2739141, at *1-2. Ms. Hampton then filed a garnishment against the insurer, St. Paul Fire & Marine Company ("St. Paul"), and St. Paul filed a motion to dismiss

---

[6] The parties agreed to allow Judge Cassady to conduct any and all proceedings in the case. *St. Paul Fire & Marine Ins. Co.*, 2005 WL 2739141, at *1.

12

contending that Ms. Hampton should have filed a separate action against it and Johnson Homes. *St. Paul Fire & Marine Ins. Co.*, 2005 WL 2739141, at *2. The state court denied the motion to dismiss and St. Paul filed a petition for writ of mandamus with the Alabama Supreme Court, which was denied. *St. Paul Fire & Marine Ins. Co.*, 2005 WL 2739141, at *2. Ms. Hampton then filed a motion to lift the stay on the garnishment proceeding that the trial court had entered while the case was being appealed, and St. Paul opposed the motion on the grounds that it was going to file a declaratory judgment action. *St. Paul Fire & Marine Ins. Co.*, 2005 WL 2739141, at *2. The state court lifted the stay. *St. Paul Fire & Marine Ins. Co.*, 2005 WL 2739141, at *2. St. Paul then filed a motion to vacate the lift of stay in state court and filed a federal declaratory judgment action against Ms. Hampton and Johnson Homes. *St. Paul Fire & Marine Ins. Co.*, 2005 WL 2739141, at *3.

Since the parties discussed *Colorado River*, Judge Cassady felt compelled to mention it but noted that the analysis fell properly under *Brillhart*, *Wilton* and *Ameritas Variable Life Ins. Co. St. Paul Fire & Marine Ins. Co.*, 2005 WL 2739141, at *5. After discussing *Wilton* and *Brillhart* at length, Judge Cassady noted that, like the present case, "*Brillhart* is virtually identical to this action except for the fact that Hampton named St. Paul as the garnishee/defendant in the ancillary garnishment proceeding, rather than adding it as a defendant." *St. Paul Fire & Marine Ins. Co.*, 2005 WL 2739141, at *8. Granting Hampton's motion to abstain from proceeding and dismissing the declaratory judgment action, Judge Cassady stated:

> The coverage issue, which is the focus of the instant declaratory judgment action, is clearly a defense available to St. Paul in the ancillary garnishment proceeding which has been the subject of litigation between it and Ms. Hampton in the state courts of Alabama since August of 2004. Alabama courts, which decided unanimously that a writ of garnishment is the proper procedural vehicle for Ms. Hampton to attempt to satisfy her judgment against Johnson Homes, have a particularly strong interest in deciding the Alabama contract issues raised in the federal declaratory action in the

13

> state courts given their collective decisions on the procedural vehicle question and the length of their association with the facts surrounding the underlying action against Johnson Homes. Certainly, the instant action would not serve to clarify the legal relations at issue in a manner that cannot also be accomplished in the state courts of Alabama. Rather, as indicated in *Brillhart,* where, as here, there is pending in state court another suit involving the same relevant parties and presenting the opportunity for ventilation of the same state law issues it would be sheer gratuitous interference by this Court to allow the declaratory judgment action to proceed. Stated differently, this Court finds that allowing the instant declaratory judgment action to proceed would increase the friction between federal and state courts and improperly encroach on state jurisdiction. It is imperative that this Court not race the state courts to *res judicata,* at the behest of St. Paul, given that this case involves the application of state law and is best decided by the state courts of Alabama.

*See St. Paul Fire & Marine Ins. Co.*, 2005 WL 2739141, at *9; *see also Capitol Indemnity Corp. v. Haverfield*, 218 F.3d 872 (8th Cir. 2000) (holding that district court abused its discretion in failing to dismiss declaratory judgment action where bench trial resulted in state court judgment, state Petition to Collect Insurance had been filed and issues involved Missouri state law); *Star Ins. Co. v. Elk Food Centers, Inc.*, 2000 WL 1196155 (S.D. Ala. 2000) (dismissing federal declaratory judgment action where coverage issues were pending in state declaratory judgment action and "many of the issues involved in this case are similar or identical to the factual and legal issues in question in the underlying" state court lawsuit).

### D.   Abatement

In addition to *Brillhart, Wilton, Ameritas Variable Life Ins. Co.* and *St. Paul Fire & Marine Ins. Co.*, Alabama's abatement statute dictates that this Court should dismiss this declaratory judgment action. Principals of res judicata and collateral estoppel preclude a party from litigating an action or issue twice. Moreover, Alabama's abatement statute, Alabama Code § 6-5-440 reads as follows:

14

> No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and **the pendency of the former is a good defense to the latter if commenced at different times**.

Ala. Code § 6-5-440 (1975) (emphasis added). The phrase "courts of this state" includes all federal courts located in Alabama. *Ex parte The University of South Alabama Foundation*, 788 So. 2d 161, 164 (Ala. 2000). A defendant with a compulsory counterclaim in the first action is considered a "plaintiff" in that action at the time of its commencement for purposes of Alabama Code § 6-5-440. *Ex parte The University of South Alabama Foundation*, 788 So. 2d at 164. Progressive had a compulsory counterclaim for declaratory judgment in the ancillary garnishment proceeding and even raised the same coverage issues in this Court and the state court. It is abated from asserting those coverage claims in federal court. *See Ex parte The Cincinnati Ins. Co.'s*, 806 So. 2d 376 (Ala. 2001) (finding that defendant in federal declaratory judgment action was abated from asserting counter-claims against insurer in later-filed state court subrogation action).

### III.   CONCLUSION

For the foregoing reasons, Progressive's declaratory judgment action is due to be dismissed.

**WHEREFORE**, the PCB Defendants, without waiver of any other defense to this action or claim against any party, move the Court to Dismiss this declaratory judgment action or, in the alternative, to abstain from exercising jurisdiction over this action in deference to the proceedings pending in the Barbour County, Alabama Circuit Court.

15

Respectfully submitted,

_____
James D. Farmer (FAR011)

_____
Christopher M. Mims (MIM002)

Attorneys for the PCB Defendants

OF COUNSEL:

FARMER, FARMER & MALONE, P.A.
112 West Troy Street
Post Office Drawer 668
Dothan, Alabama 36302-0668
(334) 794-8596

CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the foregoing Defendants Peoples Community Bank, Inc., Larry Pitchford and Jerry Gulledge's Motion to Dismiss, or in the Alternative, Motion to Abstain, upon:

>Charles A. Stewart, III, Esq.
>Bradley, Arant, Rose & White, LLP
>The Alabama Center for Commerce
>401 Adams Avenue, Suite 780
>Montgomery, Alabama 36104
>
>Thomas R. Elliott, Jr., Esq.
>London, Yancey & Elliott, LLC
>2001 Park Place, Suite 430
>Birmingham, Alabama 35203
>
>Scott B. Smith, Esq.
>Bradley, Arant, Rose & White, LLP
>200 Clinton Avenue West, Suite 900
>Huntsville, Alabama 35801-4900
>
>Hall Eady, Esq.
>Bradley, Arant, Rose & White, LLP
>One Federal Place
>1819 Fifth Avenue North
>Birmingham, Alabama 35203-2104
>
>Harris Leveson
>151 Warren Road
>Midway, Alabama 36053-4114
>
>Harris Pest and Termite Control, Inc.
>151 Warren Road
>Midway, Alabama 36053
>
>Leah O. Taylor
>Taylor & Taylor
>2130 Highland Avenue
>Birmingham, Alabama 35205

by placing a copy thereof in the United States Mail, postage prepaid, and properly addressed on this 5th day of December, 2005.

                                                  Of Counsel