# EXHIBIT B

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
EUFAULA DIVISION

HARRIS LEVESON, an individual;                    )
HARRIS PEST & TERMITE CONTROL,                    )
et al,                                             )
     Plaintiffs,                                )
                                                 )
v.                                                 )
                                                 )    CIVIL ACTION NUMBER: CV-04-67
PEOPLES COMMUNITY BANK, a                          )
corporation; LARRY PITCHFORD, an                   )
individual; JERRY GULLEDGE, an                     )
individual,                                        )
                                                 )
     Defendants.                                )

F I L E D
NOV - 4 2005
DAVID S. NIX, CLERK
BARBOUR COUNTY, ALABAMA

## MOTION TO DISMISS

Garnishee **Progressive Casualty Insurance Company** ("Progressive") moves this Court to dismiss Plaintiffs' Process of Garnishment.[1] In support of this motion, Garnishee states as follows:

1.     On October 7, 2005, the Honorable L. Bernard Smithart entered an Order ("Order") awarding to Plaintiffs $2.5 million in compensatory damages and $1 million in punitive damages against Peoples Community Bank ("Peoples") as well as the Bank's officers, Larry Pitchford ("Pitchford") and Jerry Gulledge ("Gulledge"). The judgment was entered on the following bases: (i) negligence and wantonness by Defendants in their handling and servicing of Plaintiffs' loans, notarizing loan documents, hiring branch managers, and training and supervising its employees; (ii) fraud and suppression by Defendants in their handling and servicing of Plaintiffs' loans; (iii) breach of contract; (iv) breach of fiduciary duties; (v)conversion; and (vi) outrage. It is unclear from the Order what amounts of damages were awarded to Plaintiffs for each of these claims.

---

[1] Progressive expressly reserves its right to assert additional defenses.

2.     On the very same day the Order was filed, Plaintiffs filed a Process of Garnishment against Progressive.

3.     On March 21, 2003, Progressive issued a Directors and Officers (D&O) Liability Insurance Policy (Policy) on behalf of Peoples Community Bancshares, Inc., Peoples Community Bank, Columbia, Alabama, Peoples Community Bank, Colquitt, Georgia and PCB, The Community Bank, Florida under policy number 10026768-01. A copy of the Policy is attached as Exhibit "A." The Policy provided coverage from March 26, 2003 until March 26, 2004. Importantly, the Policy is a D&O policy. If the Policy provides coverage at all, then it only provides coverage for Pitchford and Gulledge. The Policy would not cover the Bank unless the Bank paid for any covered liability for Gulledge or Pitchford by way of indemnity.[2]

4.     First and foremost, the garnishment is due to be dismissed because the statute under which Plaintiffs are proceeding does not apply to this Policy. The Plaintiffs' Process of Garnishment is filed under Section 27-23-1 (1975). That statute applies only to insurance policies under which a person or entity "is insured against loss or damage on account of the **bodily injury or death** by accident of any person for which loss or damage such insured is responsible ...." ALA. CODE § 27-23-1 (1975).[3] Further, under Alabama Code § 27-23-2, certain judgment creditors may proceed against both the defendant and its insurer when there is a final judgment "for loss or damage on account of **bodily injury, or death or for loss or damage to property**, if the defendant in such action was insured against the loss or damage at the time

---

[2] Progressive's Directors & Officers ("D&O") coverage in this action is specifically designed to provide coverage for the Directors and Officers of a financial institution separate and apart from general liability coverage which covers personal injury, wrongful death, and property damage. This coverage is different from and not duplicative of general liability coverage. See FDIC Risk Management Manual of Examination Policies (attached as Exhibit B) (distinguishing between D&O coverage and general liability coverage).

[3] By way of endorsement, the Policy amends the definition of **Loss** to eliminate from coverage "punitive or exemplary damages or the multiple portion of any multiplied damage award." See Exhibit A, Endorsement to Policy, Form No. 2844.

when the right of action arose ...." ALA. CODE § 27-23-2 (1975). The plain language of Progressive's Policy eliminates the very type of coverage contemplated by these statutes. The Policy excludes bodily injury and property damages:

> The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** for actual or alleged bodily injury, sickness, disease, or death of any person, damage to or destruction of any tangible property including loss of use thereof, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, assault, battery, mental anguish, emotional distress, loss of consortium, invasion of privacy, defamation, false light, libel, or slander; however, this Exclusion shall not apply with respect to any actual or alleged mental anguish, emotional distress, libel, slander, defamation or false light, or violation of a person's right to privacy in connection with any **Claim** by a past, present or prospective employee of the **Company** for any employment-related **Wrongful Act**.

*Id.* at pp. 3-4. This exclusion prohibits the Plaintiffs' right to proceed against Progressive because it is not the type of policy contemplated by the statute. So, the Plaintiffs have no standing to proceed against Progressive under this garnishment.

5.    Secondly, even if Plaintiffs' garnishment action was proper, it is still due to be dismissed as its filing was premature under Alabama Code § 27-23-2 (1975). This provision only applies to final judgments. There is no final judgment in this case. Post-trial motions have been filed. This code section entitles certain judgment creditors to collect "insurance money provided for in the contract of insurance . . . if the judgment is not satisfied within 30 days after the date when it is entered." ALA. CODE § 27-23-2 (1975). In Insurance Company of North America v. Davis, 150 So. 2d 192 (Ala. 1963), the Supreme Court of Alabama interpreted this language, stating, "if the judgment is left unsatisfied after the expiration of thirty days, the judgment creditor, should he so desire, may proceed in equity against the defendant and the insurance company to collect the judgment." Id. at 194 (interpreting § 27-23-2 as previously codified under § 12, Title 28, Code of Alabama 1940). So, even if the statute applied to this

Policy, since Plaintiffs prematurely filed their garnishment action on the same date as this Court's Order, Plaintiffs' garnishment action against Progressive is due to be dismissed. ALA. CODE § 27-23-2 (1975).

6.      Thirdly, even if Plaintiffs' Process of Garnishment were proper under § 27-23-2, it is due to be dismissed because it does not name Defendants as necessary garnishees. Under Alabama Code § 27-23-2, "the judgment creditor may proceed against the defendant AND the insurer to reach and apply the insurance money to the satisfaction of the judgment." ALA. CODE § 27-23-2 (1975) (emphasis added). This language provides "that the insured is a necessary party" and the garnishment "proceedings must be brought against the defendant in the action at law and the insurance company, as joint respondents." Davis, 150 So. 2d at 194. Since Defendants are not identified as additional garnishees in the Process of Garnishment, Plaintiff's garnishment proceeding is due to be dismissed by this Court.

7.      In summary, Plaintiffs' Process of Garnishment is due to be dismissed because: (i) Sections 27-23-1 and -2 do not apply to this Policy; (ii) the Policy either does not cover or expressly excludes the claims as well as the bases for the Court's award in this case; (iii) Plaintiffs failed to wait the requisite 30 days before filing their Process of Garnishment under Alabama Code § 27-23-2; and (iv) Plaintiffs neglected to sue Defendants as additional garnishees in the Process of Garnishment as required by Alabama Code § 27-23-2.

WHEREFORE, premises considered, Defendants respectfully request this Court to dismiss the Plaintiffs' Process of Garnishment and to award such other or further relief as may be appropriate.

Respectfully submitted,

Charles A. Stewart III (STE067)
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701

Thomas R. Elliott, Jr. (ELL021)
LONDON, YANCEY, & ELLIOTT, L.L.C.
2001 Park Place, Suite 430
Birmingham, Alabama 35203
Telephone: (205) 380-3600
Facsimile: (205) 251-8929

Scott B. Smith (SMI219)
Bradley Arant Rose & White LLP
200 Clinton Avenue West, Suite 900
Huntsville, AL 35801-4900
Telephone: (256) 517-5100
Facsimile: (256) 517-5200

Hall Eady (EAD006)
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served the above and foregoing on:

    Leah O. Taylor
    Taylor & Taylor
    2130 Highland Avenue
    Birmingham, AL  35205

    James L. Martin
    Post Office Box 14
    Eufaula, AL  36072-0014

    Ronald H. Rentz
    207-D West Main Street
    Colquitt, GA  39837

by placing copies of same in the United States Mail, first-class postage prepaid and addressed to their regular mailing addresses, on this 4th day of November, 2005.

                                    OF COUNSEL

1/1389795.4                    6

# PROGRESSIVE CASUALTY INSURANCE COMPANY

## DIRECTORS AND OFFICERS (D&O) LIABILITY INSURANCE POLICY
## DECLARATIONS PAGE

Policy Number: 10026768-01

**NOTE:   THIS POLICY AND ALL OF ITS ENDORSEMENTS PROVIDE CLAIMS MADE COVERAGE. READ THEM CAREFULLY.** Amounts incurred as **Defense Costs** shall reduce the Limit of Liability and shall also be applied against the Retention. This **Policy** and the Endorsements do not provide for any duty by the **Insurer** to defend those insured under this **Policy**.

**Item 1.   Named Insured(s):**

    (a)    Peoples Community Bancshares, Inc.
             Peoples Community Bank, Columbia, AL
             Peoples Community Bank, Colquitta, GA
             PCB, The Community Bank, FL

    (b)    For the purposes of the Fiduciary Liability Endorsement Only (if applicable): Employee Benefit Plan(s): All Pension, Health, Welfare and Employee Benefit Plans of the Named Insured listed in (a) above.

          **Principal Office:**    203 W. Crawford Street, Colquitt, GA 39837

**Item 2.   Policy Period:**    From 12:01 A.M. 03/26/2003 To 12:01 A.M. 03/26/2004
                         (Local time at the address shown in Item 1.)

|  | Item 3.<br>Aggregate Limit of Liability for each Policy Year during the Policy Period | Item 4.<br>Retentions Applicable to the Respective Insuring Agreements | Item 5. (a)<br>One-year Pre-paid Premium | Item 5. (b)<br>Three-year Pre-paid Premium |
|---|---|---|---|---|
| **D&O Liability Policy:** | $2,000,000 | | $16,706 | N/A |
| Insuring Agreement A | | $0 | | |
| Insuring Agreement B* | | $100,000 | | |
| **Endorsements:** | | | | |
| **Entity Errors & Omissions** | N/A | N/A | N/A | N/A |
| **SEC Entity Liability** | N/A | N/A | N/A | N/A |
| **IRA/Keogh Liability** | N/A | N/A | N/A | N/A |
| **Fiduciary Liability** | N/A | N/A | N/A | N/A |
| **Lender Liability** | N/A | N/A | N/A | N/A |
| **Trust Errors & Omissions** | N/A | N/A | N/A | N/A |
| **Entity Emp. Practices** | N/A | N/A | N/A | N/A |
| **Ins. Agent Errors & Omissions** | N/A | N/A | N/A | N/A |

Form No. 3143 (06/99)    FDIC No. 21292

**EXHIBIT**

*A*

\* . Claims arising from Wrongful . . . , as defined in Section III (L) (2), shall . . . subject to the following Retention: $5,000.

**Item 6.** **Prior Litigation Dates:**

| | |
|---|---|
| D&O Liability | 01/10/2002 |
| Entity Errors & Omissions | N/A |
| SEC Entity Liability | N/A |
| IRA/Keogh Liability | N/A |
| Fiduciary Liability | N/A |
| Lender Liability | N/A |
| Trust Errors & Omissions | N/A |
| Entity Emp. Practices | N/A |
| Ins. Agent Errors & Omissions | N/A |

**Item 7.** **Discovery Period:** 75% of the premium set forth in Item 5.(a) above, as provided in Section II (D), to be paid only if the eligibility requirements are met and the Discovery Period option is properly exercised. The length of the Discovery Period will be 365 days.

**Item 8.** **Endorsements:** This Policy is subject to the terms of the following Endorsements attached hereto and incorporated herein by reference at the effective date of this **Policy** and to all other Endorsements attached hereto after the effective date of this **Policy:** 8039, TRIA-01, 2809, 2844, 4475, 7933D, 7988

**Item 9.** **Notices:** All notices required to be given to the **Insurer** under this **Policy** shall be addressed to Progressive Casualty Insurance Company, PLG Division, P.O. Box 24660, Cleveland, Ohio 44124.

These Declarations, along with the completed and signed **Application,** including attachments, the D&O Policy and all Endorsements thereto, shall constitute the contract between the **Insured Persons,** the **Company** and **Progressive Casualty Insurance Company,** 6300 Wilson Mills Road, Mayfield Village, Ohio 44143.

Date: <u>March 21, 2003</u>

*[signature]*

Company Officer or Authorized Agent

Form No. 3143 (06/99)    FDIC No. 21292

# DIRECTORS AND OFFICERS (D&O) LIABILITY INSURANCE POLICY
## TABLE OF CONTENTS

**I.   INSURING AGREEMENTS**

**II.  ADDITIONAL COVERAGES**
A.   Estates, Heirs and Legal Representatives
B.   Marital Estate Liability
C.   Not-for-Profit Directorships
D.   Discovery Period

**III. DEFINITIONS**
A.   Application
B.   Claim
C.   Company
D.   Defense Costs
E.   Insured Person
F.   Interrelated Wrongful Acts
G.   Loss
H.   Policy
I.   Policy Period
J.   Policy Year
K.   Subsidiary
L.   Wrongful Act

**IV.  EXCLUSIONS**
A.   Bodily Injury and Property Damage Exclusion
B.   Collusion Exclusion
C.   ERISA Exclusion
D.   Fraud Exclusion
E.   Illegal Profit Exclusion
F.   Insured vs. Insured Exclusion
G.   Pollution Exclusion
H.   Prior Notice Exclusion
I.   Prior and Pending Litigation Exclusion
J.   Short-Swing Profit Exclusion
K.   Subsidiary Past Acts Exclusion

**V.   LIMIT OF LIABILITY AND RETENTION**

**VI.  DEFENSE COSTS**
A.   No Duty to Defend
B.   Advancement of Defense Costs

**VII. NOTICE OF CLAIMS AND POTENTIAL CLAIMS**

**VIII. MERGERS AND ACQUISITIONS**

**IX.  GENERAL CONDITIONS**
A.   Cancellation, Nonrenewal or Termination
B.   Allocation
C.   Representations and Severability
D.   Subrogation
E.   Assignment and Acceptance
F.   Conformity to Statute
G.   Authorization
H.   Changes
I.   Action Against the Insurer
J.   Other Insurance or Indemnification
K.   Headings and Table of Contents

(A Stock Insurance Company, herein called the Insurer)

# DIRECTORS AND OFFICERS (D&O) LIABILITY INSURANCE POLICY

**THIS IS A CLAIMS MADE POLICY WRITTEN ON A NO DUTY TO DEFEND BASIS. DEFENSE COSTS ARE INCLUDED WITHIN THE LIMIT OF LIABILITY. AMOUNTS INCURRED AS DEFENSE COSTS WILL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS. PLEASE READ YOUR POLICY CAREFULLY.**

In consideration of the premium paid and in reliance upon all statements made in the Declarations and **Application**, the **Insurer**, the **Insured Persons** and the **Company** agree that coverage will be provided subject to all of the terms, conditions and limitations of this **Policy**, as follows:

## SECTION I - INSURING AGREEMENTS

A.    The **Insurer** will pay on behalf of the **Insured Persons**, **Loss** in excess of the applicable Retention resulting from **Claims** first made during the **Policy Period** against the **Insured Persons** for which the **Insured Persons** are legally obligated to pay for **Wrongful Acts**, except for **Loss** which the **Company** pays as indemnification.

B.    The **Insurer** will pay on behalf of the **Company**, **Loss** in excess of the applicable Retention resulting from **Claims** first made during the **Policy Period** against the **Insured Persons** for which the **Company** has agreed to or is legally permitted or required by law to indemnify the **Insured Persons** for **Wrongful Acts**.

## SECTION II - ADDITIONAL COVERAGES

A.    **ESTATES, HEIRS AND LEGAL REPRESENTATIVES** - This **Policy** shall cover **Loss** resulting from **Claims** for the **Wrongful Acts** of **Insured Persons** made against the estates, heirs, legal representatives or assigns of any **Insured Persons** who are deceased, incompetent, insolvent or bankrupt; provided, however, that such **Claims** would have been covered by this **Policy** in the absence of such death, incompetency, insolvency or bankruptcy.

B.    **MARITAL ESTATE LIABILITY** - This **Policy** shall cover **Loss** resulting from **Claims** for **Wrongful Acts** made against an **Insured Person's** lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise); provided, however, that such **Claims** made against the **Insured Person** would have been covered by this **Policy**. This additional coverage includes only such **Claims** that seek damages recoverable from marital community property, property jointly held by an **Insured Person** and the spouse, or property transferred from the **Insured Person** to the spouse. This additional coverage shall not include any **Claim** arising out of or in any way involving any actual or alleged act of the spouse.

C.    **NOT-FOR-PROFIT DIRECTORSHIPS** - This **Policy** shall cover **Loss** resulting from **Claims** for **Wrongful Acts** committed by **Insured Persons** serving as directors, trustees or officers of any not-for-profit entity at the direction of the **Company**; however, this insurance shall be specifically excess over any other insurance or indemnification available to the **Insured Persons**.

D.   **DISCOVERY PERIOD** If any of the following occur, the Company shall have the right to purchase the extended reporting period (herein called the Discovery Period) the period set forth in Item 7 of the Declarations:

(1)   the **Company** or the **Insurer** cancels this **Policy**;

(2)   the **Company** or the **Insurer** nonrenews this **Policy**; or

(3)   the **Policy** terminates as a result of a merger, acquisition or consolidation pursuant to Section IX (A)(3)(b).

The Discovery Period is not an extension of coverage, but rather an extended reporting period for **Claims** first made during the Discovery Period resulting from **Wrongful Acts** that occurred prior to the effective date of cancellation, nonrenewal or termination and otherwise covered by this **Policy**. Notice of facts and circumstances which may give rise to a **Claim**, pursuant to Section VII (B), must be given during the **Policy Period**. Such notice, if provided during the Discovery Period, will not trigger coverage under this **Policy**.

If the **Company** elects to purchase the Discovery Period, the premium will be calculated by multiplying the annual premium for the **Policy Period** set forth in Item 5(a) of the Declarations by the percentage set forth in Item 7 of the Declarations. The **Company's** right to purchase the Discovery Period shall lapse unless the **Insurer** receives written notice of the **Company's** election and full payment of the additional premium due within sixty (60) days of the effective date of cancellation, nonrenewal or termination. The entire premium for the Discovery Period shall be deemed earned at its commencement.

The Discovery Period shall terminate immediately upon the effective date of any contract of insurance which replaces, either in whole or in part, the coverage afforded by this **Policy**. The Limit of Liability with respect to **Claims** made during the Discovery Period shall be part of and not in addition to the Limit of Liability for all **Claims** made during the immediately preceding **Policy Year**.

## SECTION III - DEFINITIONS

A.   **Application** means all applications, attachments and materials submitted to the **Insurer** for this **Policy** or any **Policy** of which this **Policy** is a direct or indirect renewal or replacement. All such applications, attachments and materials are deemed attached to and incorporated into this **Policy**, as if physically attached.

B.   **Claim**, either in singular or plural, means any written or oral demand or legal, injunctive, administrative, regulatory or arbitration proceeding against an **Insured Person** for a **Wrongful Act** and shall include any appeal from such proceeding.

C.   **Company** means the first named entity set forth in Item 1 of the Declarations, any **Subsidiary** created or acquired as of the inception date set forth in Item 2 of the Declarations, and subject to Section VIII (A), any **Subsidiary** created or acquired during the **Policy Period.**

D.   **Defense Costs** means reasonable and necessary legal fees and expenses incurred in the investigation and/or defense of any **Claim** and appeals therefrom, the cost of attachment or similar bonds; provided, however, **Defense Costs** shall not include salaries, wages, overhead or benefit expenses.

E.   **Insured Person**, either in s  jular or plural, means any past, presen   future director, trustee, officer, employee or honorary or advisory director or trustee of the **Company**.

F.   **Interrelated Wrongful Acts** means **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions.

G.   **Loss** means any amount which the **Insured Persons** are legally obligated to pay for a **Claim**, including **Defense Costs**, damages, judgments, settlements, pre- and post-judgment interest, punitive or exemplary damages and the multiple portion of any multiplied damage award where insurable by law, except **Loss** shall not include:

(1)   criminal or civil fines or penalties imposed by law; or

(2)   taxes; or

(3)   matters which are uninsurable under the law pursuant to which this **Policy** shall be construed.

H.   **Policy**, either in single or plural, means collectively, the Declarations, the **Application**, this policy form and any Endorsements attached hereto.

I.   **Policy Period** means the period from the inception date of this **Policy** to the expiration date set forth in Item 2 of the Declarations or any earlier termination date.

J.   **Policy Year** means the period of one year following the effective date and hour of this **Policy** or any anniversary thereof, or if the time between the effective date or any anniversary date and termination of the **Policy Period** is less than one year, such lesser period.

K.   **Subsidiary** means any entity in which the **Company** owns, directly or through one or more **Subsidiaries**, more than 50% of the outstanding voting securities.

L.   **Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by:

(1)   any **Insured Person** acting solely in the capacity as such; or by any **Insured Person** acting in the capacity of director, officer, or trustee of a not-for-profit entity serving at the direction of the **Company** as defined by Section II (C); or

(2)   any **Insured Person** in the discharge of their duties while acting solely in the capacity as administrator or trustee under any individual retirement account (IRA) or H.R. 10 Plan (Keogh Plan).

## SECTION IV - EXCLUSIONS

A.   **Bodily Injury and Property Damage Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** for actual or alleged bodily injury, sickness, disease, or death of any person, damage to or destruction of any tangible property including loss of use thereof,

wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, assault, battery, mental anguish, emotional distress, loss of consortium, invasion of privacy, defamation, false light, libel, or slander; however, this Exclusion shall not apply with respect to any actual or alleged mental anguish, emotional distress, libel, slander, defamation or false light, or violation of a person's right to privacy in connection with any **Claim** by a past, present or prospective employee of the **Company** for any employment-related **Wrongful Act**.

B.   **Collusion Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** by any security holder of the **Company**, whether directly or derivatively, unless such security holder bringing such **Claim** is acting independent of, and totally without the solicitation, assistance, or participation, or intervention of any **Insured Person, the Company**, or any affiliate of the **Company**.

C.   **ERISA Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any pension, profit sharing or employee benefit program established in whole or in part for the benefit of any of the employees of the **Company**, including without limitation any violation of the Employee Retirement Income Security Act of 1974, as amended (ERISA) or similar provisions of any federal, state or local statutory law, common law or administrative law.

D.   **Fraud Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss**, other than **Defense Costs,** in connection with any **Claim** arising out of or in any way involving a fraudulent, dishonest or criminal act or willful violation of any civil or criminal statute, regulation or law by any **Insured Person**; however, this Exclusion shall apply only if a judgment or other final adjudication establishes such a fraudulent, dishonest, or criminal act or willful violation of any statute, regulation or law.

E.   **Illegal Profit Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss**, other than **Defense Costs,** in connection with any **Claim** arising out of or in any way involving any **Insured Person** gaining any profit, remuneration, or financial advantage to which the **Insured Person** was not legally entitled; however, this Exclusion shall apply only if a judgment or other final adjudication establishes that the **Insured Person** was not legally entitled to such profit, remuneration or financial advantage.

F.   **Insured vs. Insured Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** by or at the behest of the **Company**, or any affiliate of the **Company** or any **Insured Person** except:

   (1)   where such **Claim** is brought by the **Insured Person** and arises out of the employment of the **Insured Person**; or

   (2)   where such **Claim** is brought by an **Insured Person** in the form of a cross claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded by the terms of the **Policy**.

G.   **Pollution Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving:

   (1)   the actual, alleged or threatened discharge, disposal, migration, dispersal, release or escape of pollutants; or

(2)     any direction, order / request to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize pollutants, or to pay for or contribute to the costs of undertaking such actions, including **Claims** alleging damage to the **Company** or its shareholders.

Pollutants include but are not limited to any solid, liquid, gaseous or thermal organism, irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, hazardous substances, nuclear materials and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

H.      **Prior Notice Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any **Wrongful Act** or **Interrelated Wrongful Acts**, or any fact, circumstance or situation, which has been the subject of any notice given prior to the effective date of this **Policy** under any other insurance policy providing protection for the **Insured Persons** or the **Company**.

I.      **Prior and Pending Litigation Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any litigation against any **Insured Person** or the **Company** initiated prior to the date set forth in Item 6 of the Declarations, or arising out of or in any way involving the same or substantially the same fact, circumstance or situation underlying or alleged in such prior litigation.

J.      **Short-Swing Profit Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving an accounting of profits made from the purchase and sale or sale and purchase of **Company** securities by the **Insured Persons** within the meaning of Section 16(b) of the Securities Exchange Act of 1934, as amended, or similar provisions of any state statutory law or common law.

K.      **Subsidiary Past Acts Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** against any **Insured Person** for any **Wrongful Act** or **Interrelated Wrongful Acts** while acting in the capacity of director, trustee, officer or employee of any **Subsidiary** at any time in which the entity was not a **Subsidiary**.

Any **Wrongful Act** committed by any **Insured Person** will not be imputed to any other **Insured Person** for the purpose of applying the Exclusions set forth in this Section.

## SECTION V - LIMIT OF LIABILITY AND RETENTION

A.      The maximum Aggregate Limit of Liability for all **Loss**, including **Defense Costs**, for all **Claims** first made during each **Policy Year** shall not exceed the applicable amount set forth in Item 3 of the Declarations for all **Claims** first made during the **Policy Year**, regardless of the time of payment by the **Insurer** and regardless of whether or not the **Claims** were made during the **Policy Period** or Discovery Period. Except for the payment of **Defense Costs**, the **Insurer** shall pay or reimburse one hundred percent (100%) of covered **Loss**, in excess of the applicable Retention, upon final disposition of the **Claim**.

B.      Covered **Defense Costs** will be applied against the Retention. Covered **Defense Costs** will reduce and shall be part of and not in addition to the Limit of Liability.

C.   Claims based upon or arising out of the same Wrongful Act or Interrelated Wrongful Acts committed by one or more of the **Insured Persons** shall be considered a single **Claim**, and only one Retention and Limit of Liability shall be applicable. However, each such single **Claim** shall be deemed to be first made on the date the earliest of such **Claims** was first made, regardless of whether such date is before or during the **Policy Period**.

D.   One Retention amount shall apply to the covered portion of each and every **Claim**. If **Loss** from a **Claim** is covered under more than one Insuring Agreement (including any Insuring Agreement in any Endorsements hereto), the applicable Retention shall be applied separately to the part of the **Loss** covered by each Insuring Agreement, and the sum of such Retentions shall be the Retention applicable to such **Claim**. The total Retention shall in no event exceed the largest of such applicable Retentions set forth in Item 4 of the Declarations.

E.   If the **Company** is legally permitted to indemnify the **Insured Persons,** regardless of whether or not actual indemnification is granted, the Retention applicable to Insuring Agreement B shall apply to such **Loss** unless indemnification is not made by the **Company** solely by reason of its financial insolvency.

## SECTION VI - DEFENSE COSTS

A.   **NO DUTY TO DEFEND** - It shall be the duty of the **Insured Persons** and the **Company** and not the duty of the **Insurer** to defend **Claims**, provided that the **Insured Persons** and the **Company** shall only retain counsel that is mutually agreed upon with the **Insurer**.

The **Insured Persons** and the **Company** shall not admit liability for or settle any **Claim**, or incur any **Defense Costs** for any **Claim**, without the **Insurer's** prior written consent, which shall not be unreasonably withheld. The **Insurer** shall be entitled to full information and all particulars it may request in order to reach a decision as to such consent.

The **Insurer** shall have the right but not the duty to associate effectively with the **Company** and the **Insured Persons** in the settlement and defense of any **Claim** that appears reasonably likely to involve the **Insurer**. Such association shall include, but not be limited to, participation in the formation of litigation strategy, review of pleadings and other pertinent papers prior to filing, and participation in the settlement negotiations.

B.   **ADVANCEMENT OF DEFENSE COSTS** - Subject to Section IX (B), the **Insurer**, if requested by the **Company** or **Insured Persons**, shall pay covered **Defense Costs** on a current basis, except when payment of **Defense Costs** is prohibited by law or regulation. Any **Defense Costs** paid in this manner by the **Insurer** shall be repaid to the **Insurer** by the **Company** or such **Insured Persons** in the event it is established that the **Insurer** has no liability under this **Policy** for such **Defense Costs**. As a condition precedent to coverage under the **Policy**, the **Company** and the **Insured Persons** shall provide the **Insurer** with such information, assistance and cooperation as the **Insurer** may reasonably request.

## SECTION VII - NOTICE OF CLAIMS AND POTENTIAL CLAIMS

A.   The **Company** or **Insured Persons,** as a condition precedent to their rights under this **Policy**, shall give the **Insurer** notice in writing, as soon as practicable, of any **Claim** first made during the **Policy Period** or Discovery Period, but in no event later than sixty (60) days after such **Claim** is made.

B.    If prior to the effective date of the cancellation or nonrenewal, or term / option of this Policy, the Insured Persons or the Company fi,   become aware of circumstances whic.  .aay subsequently give rise to a Claim, and give written notice to the Insurer of the circumstances and reasons for anticipating a Claim, then any covered Claim subsequently made based upon such circumstances shall be deemed for the purposes of this Policy to have been first made during the Policy Year in which notice is given to the Insurer; provided, however, as a condition precedent for any coverage hereunder, such notice must be specific and contain full particulars as to the names, dates, and persons involved in the underlying facts potentially giving rise to the Claim, as well as the identity of the potential plaintiffs and the causes of action to be asserted.

C.    In addition to furnishing the notice as provided in (A) and (B) above, the Insured Persons or the Company shall promptly furnish the Insurer with all information reasonably requested by the Insurer including, but not limited to, copies of reports, investigations, pleadings and other papers in connection therewith.

## SECTION VIII - MERGERS AND ACQUISITIONS

A.    If during the Policy Period, the Company acquires or merges with another entity whereby the Company is the surviving entity, or creates or acquires a Subsidiary, whose assets exceed 25% of the Company's total assets at the time of the transaction, the Insurer reserves the right to amend the Policy or assess additional premium. No coverage shall be afforded under this Policy for any Loss incurred by such entity, Subsidiary or its Insured Persons resulting from any Claim first made prior to:

(1)    the Company providing written notice of such transaction, including any requested information regarding the transaction, to the Insurer as soon as practicable;

(2)    the Insurer, at its sole discretion, agreeing in writing to provide such coverage; and

(3)    the Company accepting any special terms, conditions and/or Exclusions and paying any additional premium required by the Insurer.

B.    In the event that all of the conditions stated in (A) above are met, any coverage afforded under this Policy for a Loss in any way involving the assets or entity acquired or the assets, liabilities, directors, officers or employees of the entity merged with shall not apply to any Claim arising out of or directly or indirectly resulting from:

(1)    Any Wrongful Act or any fact, circumstance or situation committed or allegedly committed prior to the effective date of such acquisition, merger or creation; or

(2)    Any other Wrongful Act which, together with a Wrongful Act committed or allegedly committed prior to effective date of such acquisition, merger or creation constitute Interrelated Wrongful Acts.

C.    If during the Policy Period, the Company is acquired by or merges or consolidates with another entity whereby the Company is not the surviving entity, the Policy will terminate pursuant to Section IX (A)(3)(b) and the Company shall have the right to purchase the Discovery Period subject to the terms and conditions set forth in Section II (D).

## A.    CANCELLATION, NONRENEWAL OR TERMINATION

(1)    **CANCELLATION** - This **Policy** may be canceled by the **Company** at any time by providing written notice or by the surrender of this **Policy** to the **Insurer**. If this **Policy** is canceled by the **Company**, the **Insurer** shall only return ninety (90%) percent of the unearned premium. For three-year pre-paid **Policies**, the **Insurer** shall only return ninety (90%) percent of the unearned premium until the first anniversary. After the first anniversary, unearned premium will be returned on a pro-rata basis.

This **Policy** may also be canceled by the **Insurer** by mailing to the **Company** by certified mail at the address set forth in Item 1 of the Declarations, written notice stating the reason or reasons for the cancellation and when, not less than sixty (60) days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice, and this **Policy** shall terminate at the date and hour specified in such notice. This **Policy** may only be canceled by the **Insurer** for one or more of the following reasons:

(a)    failure to pay premium when due; or

(b)    fraud or material misrepresentation in the obtaining of the **Policy** or in the presentation of a **Claim** thereunder; or

(c)    substantial breaches of contractual duties, conditions or warranties; or

(d)    substantial change in the risk assumed, except to the extent that the **Insurer** should reasonably have foreseen the change or contemplated the risk in writing the contract; or

(e)    any other reason permitted under the law pursuant to which this **Policy** should be constructed.

If this **Policy** is canceled by the **Insurer**, the **Insurer** shall return 100% of the unearned premium. The return of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

(2)    **NONRENEWAL** - If the **Insurer** elects not to renew this **Policy**, the **Insurer** shall provide the **Company** with no less than sixty (60) days advance notice thereof. If applicable law requires a longer provision, this notice period will be deemed to be amended so as to be equal to the minimum period of limitation required by law.

(3)    **TERMINATION** - This **Policy** shall be deemed terminated upon the happening of any of the following events:

(a)    The appointment of a receiver, conservator, trustee, liquidator, rehabilitator, or any similar official for or with respect to the **Company**; or

The acquisition of the **Company** by another entity or the merger or consolidation of the **Company** into another entity such that the **Company** is not the surviving entity or the acquisition of substantially all of the assets of the **Company** by another entity.

In either such event, the **Insurer** shall return the unearned premium calculated on a pro-rata basis. Payment of any unearned premium shall not be a condition precedent to the effectiveness of termination but such payment shall be returned as soon as practicable.

B. **ALLOCATION** - If in any **Claim**, the **Insured Persons** incur **Loss** jointly with others (including the **Company** if the **Claim** against the **Company** is not covered by Endorsement to this **Policy**) or incur an amount consisting of both covered and uncovered **Loss** because the **Claim** includes both covered and uncovered matters, then the **Insurer**, the **Company** and the **Insured Persons** shall allocate such amount as follows:

(1) 100% of all covered **Loss**, other than **Defense Costs**, incurred solely by the **Insured Persons** or jointly by the **Insured Persons** and the **Company** shall be allocated to covered **Loss**.

(2) all other amounts shall be allocated between covered **Loss** and uncovered loss based on the relative legal exposures of the parties to covered and uncovered matters. The **Insurer**, the **Company** and the **Insured Persons** agree to use their best efforts to reach a proper allocation of such amounts.

If the **Insured Persons**, the **Company** and the **Insurer** cannot agree on an allocation:

(1) no presumption as to allocation shall exist in any arbitration, suit or other proceeding;

(2) the **Insurer** shall advance on a current basis **Defense Costs** which the **Insurer** believes to be covered under this **Policy** until a different allocation is negotiated, arbitrated or judicially determined; and

(3) the **Insurer**, if requested by the **Insured Persons** and/or the **Company**, shall submit the allocation dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel. The arbitration panel shall consist of one arbitrator selected by the **Insured Persons** and the **Company**, one arbitrator selected by the **Insurer**, and a third independent arbitrator selected by the first two arbitrators. In any such arbitration, each party will bear its own legal fees and expenses.

Any negotiated, arbitrated or judicially determined allocation of **Defense Costs** will be applied retroactively to all **Defense Costs**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Defense Costs** shall not apply to or create any presumption with respect to the allocation of other **Loss** arising from such **Claim** or any other **Claim**.

C. **REPRESENTATIONS AND SEVERABILITY** - It is agreed and represented that the particulars and statements contained in the **Application** are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of this **Policy**. By acceptance of this **Policy**, the **Insured Persons** and the **Company** agree:

(1) that this Policy shall be deemed to be a single unitary contract and not a severable contract of insurance or a series of individual contracts of insurance with each of the **Insured Persons**;

(2) that the statements in the **Application** are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the **Insurer** under this **Policy**, and that this **Policy** is issued in reliance upon the truth of such representations; and

(3) that in the event the **Application** contains misrepresentations made with the actual intent to deceive, or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under this **Policy**, this **Policy** shall be void ab initio in its entirety and of no effect whatsoever. For purposes of determining whether this **Policy** shall be void ab initio in its entirety, material facts or circumstances known to or material misrepresentations or omissions by one or more of the persons signing the **Application** shall be imputed to the **Company** and all **Insured Persons**. Any misstatement or omission in the **Application** with respect to a specific **Wrongful Act** by an **Insured Person** or that **Insured Person's** knowledge of any fact, circumstance or situation which could result in a future **Claim** shall not be imputed to any other **Insured Person** or the **Company** for purposes of determining the validity of this **Policy** as to such other **Insured Person** or the **Company**, except when the **Insured Person** making such misstatement or omission or having such knowledge has signed the **Application**.

D. **SUBROGATION** - In the event of any payment under this **Policy**, the **Insurer** shall be subrogated to the extent of such payment to all the **Insured Persons'** and the **Company's** rights to recovery therefor, and the **Insured Persons** or the **Company** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents as may be necessary to enable the **Insurer** effectively to bring suit in the name of the **Insured Persons** or the **Company**.

E. **ASSIGNMENT AND ACCEPTANCE** - By acceptance of this **Policy**, the **Company**, the **Insured Persons** and the **Insurer** agree that this **Policy** and any written Endorsements attached thereto constitute the entire agreement between the parties. Assignment of interest under this **Policy** shall not bind the **Insurer** until its consent is endorsed hereon.

F. **CONFORMITY TO STATUTE** - Any terms of this **Policy** which are in conflict with the terms of any applicable laws construing this **Policy**, are hereby amended to conform to such laws.

G. **AUTHORIZATION** - By acceptance of this **Policy**, the **Company** agrees to act on behalf of itself and all **Insured Persons** for all purposes under this **Policy** including, but not limited to, giving and receiving of all notices and correspondence, cancellation, nonrenewal or termination of this **Policy**, payment of premiums, and receipt of any return premiums that may be due under this **Policy**; and the **Insured Persons** agree that such entity shall act on their behalf.

H. **CHANGES** - Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the **Insurer** shall not effect a waiver or a change in any part of this **Policy** or stop the Insurer from asserting any right under the terms of this **Policy**, nor shall the terms, conditions and limitations of this **Policy** be waived or changed, except by written Endorsement issued to form a part of this **Policy**.

I. **ACTION AGAINST THE INSURER** - No action shall be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this **Policy**, and

until the **Company's** or **Insured Persons'** obligation to pay is finally determined, either by an adjudication or by written agreement of the **Insured Persons**, claimant and the **Insurer**.

No person or organization shall have any right under this **Policy** to join the **Insurer** as a party to any **Claim** against the **Insured Persons** or **Company** nor shall the **Insurer** be impleaded by the **Insured Persons**, the **Company** or their legal representatives in any such **Claim**.

J.    **OTHER INSURANCE OR INDEMNIFICATION** - This **Policy** shall not be subject to the terms of any other insurance. All **Loss**, including **Defense Costs**, payable under this **Policy** shall be excess to, and paid only after all available payments are made under:

(1)    other existing insurance including, but not limited to, any insurance under which there is a duty to defend; and

(2)    indemnification to which an **Insured Person** or the **Company** is entitled from any entity other than the **Company**.

K.    **HEADINGS AND TABLE OF CONTENTS** - The descriptions in the headings, sub-headings and Table of Contents of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

IN WITNESS WHEREOF, the **Insurer** has caused this **Policy** to be signed by its President and Secretary and countersigned, if required, on the Declarations Page by a duly authorized agent of the **Insurer**.

### PROGRESSIVE CASUALTY INSURANCE COMPANY

Dane A. Shrallow
Secretary

Glenn Renwick
President

# PROGRESSIVE CASUALTY INSURANCE COMPANY

## MODIFICATION TO SECTION VIII

### Mergers and Acquisitions

Policy Number: 10026768-01

In consideration of the premium paid and in reliance upon all statements made in the Declarations and **Application**, the **Insurer**, the **Insured Persons**, and the **Company** agree that Section VIII of the **Policy** is deleted and replaced as follows:

### SECTION VIII - MERGERS, ACQUISITIONS AND CONVERSIONS

A.   If during the **Policy Period**, the **Company** acquires or merges with another bank financial institution whereby the **Company** is the surviving entity, or creates or acquires a **Subsidiary**, the **Insurer** reserves the right to amend the **Policy** or assess additional premium. No coverage shall be afforded under this **Policy** for any **Loss** incurred by such bank financial institution, **Subsidiary** or its **Insured Persons** resulting from any **Claim** first made prior to:

   (1)   the **Company** providing written notice of such transaction, including any requested information regarding the transaction, to the **Insurer** as soon as practicable;

   (2)   the **Insurer**, at its sole discretion, agreeing in writing to provide such coverage; and

   (3)   the **Company** accepting any special terms, conditions and/or Exclusions and paying any additional premium required by the **Insurer**.

   However, if during the **Policy Period**, the **Company** creates or acquires a bank financial institution, whose assets are less than 25% of the **Company's** total assets at the time of the transaction, the **Insurer** agrees to provide automatic coverage for said bank financial institution.

B.   In the event that all of the conditions stated in (A) above are met, any coverage afforded under this **Policy** for a **Loss** in any way involving the assets of the financial institution acquired or the assets, liabilities, directors, officers or employees of the financial institution merged with shall not apply to any **Claim** arising out of or directly or indirectly resulting from:

   (1)   Any **Wrongful Act** or any fact, circumstance or situation committed or allegedly committed prior to the effective date of such acquisition, merger or creation; or

   (2)   Any other **Wrongful Act** which, together with a **Wrongful Act** committed or allegedly committed prior to effective date of such acquisition, merger or creation constitute **Interrelated Wrongful Acts**.

C.    If during the **Policy Period** the **Company** is acquired by or merge, consolidates with another entity whereby the **Company** is not the surviving entity, the **Policy** will terminate pursuant to Section IX (A)(3)(b) and the **Company** shall have the right to purchase the Discovery Period subject to the terms and conditions set forth in Section II (D).

D.    If during the **Policy Period**, the **Company**:

(1)    creates, acquires or converts from a bank holding company to a financial services holding company;

(2)    converts from a Mutual Company to a Stock Company;

(3)    changes or converts its corporate structure from a C corporation to an S corporation

no coverage shall be afforded under this **Policy** for said entity or any **Subsidiary** of said entity for any **Loss** resulting from any **Claim** first made prior to:

(1)    the **Company** providing written notice of such transaction, including any requested information regarding the transaction, to the **Insurer** as soon as practicable;

(2)    the **Insurer**, at its sole discretion, agreeing in writing to provide such coverage; and

(3)    the **Company** accepting any special terms, conditions and/or Exclusions and paying any additional premium required by the **Insurer**.


This Endorsement shall be effective as of 12:01 a.m. on 03/26/2003.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.


Dane A. Shrallow
Secretary

Glenn Renwick
President

# PROGRESSIVE CASUALTY INSURANCE COMPANY

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

Policy Number: 10026768-01

Coverage for acts of terrorism is already included in your current policy. You should know that, effective November 26, 2002, under your existing coverage, any losses caused by certified acts of terrorism would be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The portion of your annual premium that is attributable to coverage for acts of terrorism is: $0.00.

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT OF 2002, ANY LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE WILL BE PARTIALLY REIMBURSED BY THE UNITED STATES AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

_____
Policyholder/Applicant's Signature

_____
Print Name

_____
Date

Form No. TRIA-01 (12/02)    FDIC No. 21292

# progressive casualty insurance company

## GENERAL LIMITATION OF COVERAGE

### Past Acts Exclusion

Policy Number 10026768-00

The **Insurer**, the **Insured Persons** and the **Company** agree that Section IV of the **Policy** is amended to add the following Exclusion:

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any actual or alleged **Wrongful Acts** which occurred on or before 01/10/1997.

This Endorsement significantly restricts your **Policy**. By signing this Endorsement, the **Insured Persons** and the **Company** acknowledge that they are aware this Endorsement significantly limits coverage under the **Policy**.

_____3/26/03_____                          _Rickey E. Stuckey_
Date                                        Signature (Title)

This Endorsement shall be effective as of 12:01 a.m. on 01/10/2002.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

Secretary                                   President

Form No. 2809 (2/99)    FDIC No. 21292

# PROGRESSIVE CASUALTY INSURANCE COMPANY

## GENERAL LIMITATION OF COVERAGE

### Punitive and Exemplary Damages Exclusion

Policy Number 10026768-01

The **Insurer**, the **Insured Persons** and the **Company** agree that the definition of **Loss** as defined within Section III (G) of the **Policy** is amended to add the following paragraph:

Notwithstanding any other provision of the **Policy** the definition of **Loss** shall not include punitive or exemplary damages or the multiple portion of any multiplied damage award.

The remainder of the definition of **Loss** as defined within the **Policy** and each Endorsement (if applicable) shall remain unchanged.

This Endorsement shall be effective as of 12:01 a.m. on 03/26/2003.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

Dane A. Shrallow
Secretary

Glenn Renwick
President

Form No. 2844 (6/99)   FDIC No. 21292

# *progressive casualty insurance company*

## GENERAL LIMITATION OF COVERAGE

### Trust Operations Exclusion

Policy Number 10026768-01

The **Insurer**, the **Insured Persons** and the **Company** agree that Section IV of the **Policy** is amended to add the following Exclusion:

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the Trust Operations of the **Company** including, but not limited to, the **Company** or any person or entity for which the **Company** is legally responsible exercising any trust or fiduciary powers permitted by law; however, this Exclusion shall not apply to **Claims** arising out of the **Company's** acting as administrator or trustee under any individual retirement account (IRA) or H.R. 10 plan (Keogh Plan).

It is further understood and agreed that this **Policy** will not under any circumstances be considered excess and/or contributory to any present or any other similar replacement Trust Department Errors and Omissions Insurance Policy.

This Endorsement shall be effective as of 12:01 a.m. on 03/26/2003.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

Secretary                                   President

Form No. 4475 (6/99)   PDIC No. 21292

# PROGRESSIVE CASUALTY INSURANCE COMPANY

## MODIFICATION TO SECTION IV

### Exclusions

Policy Number: 10026768-01

In consideration of the premium paid and in reliance upon all statements made in the Declarations and **Application**, the **Insurer**, the **Insured Persons**, and the **Company** agree that Section IV (F) of the **Policy** is deleted and replaced as follows:

F.    **Insured vs. Insured Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** by or at the behest of the **Company**, or any affiliate of the **Company** or any **Insured Person** except:

   (1)    where such **Claim** is brought by the **Insured Person** and arises out of the employment of the **Insured Person**; or

   (2)    where such **Claim** is brought by an **Insured Person** in the form of a cross claim or third party-claim for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded by the terms of the **Policy**.

   (3)    where such **Claim** is brought by an **Insured Person** solely as a customer of the **Company**.

This Endorsement shall be effective as of 12:01 a.m. on 03/26/2003.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.


Dane A. Shrallow
Secretary

Glenn Renwick
President


Form No. 7933D (05/02)        FDIC No. 21292

# PROGRESSIVE CASUALTY INSURANCE COMPANY

## MODIFICATION TO SECTION V

### Order of Payments

Policy Number: 10026768-01

In consideration of the premium paid and in reliance upon all statements made in the Declarations and **Application**, the **Insurer**, the **Insured Persons**, and the **Company** agree that Section V of the **Policy** is amended to add the following subsection:

F.    In the event a **Claim** under this **Policy** and any Endorsement providing coverage for the **Company** results in **Loss** which, in aggregate, in the **Insurer's** judgment could reasonably exceed the Limit of Liability set forth in Item 3 of the Declarations, then the **Insurer** shall first pay for such **Loss** for which coverage is provided under Insuring Agreement A, then with respect to whatever remaining amount of the Limit of Liability is available after payment of such **Loss**:

(1) pay such **Loss** for which coverage is provided under Insuring Agreement B of the **Policy**, then

(2) if applicable, pay such **Loss** for which coverage is provided to the **Company** by Endorsement to this **Policy**.

For the purposes of determining the amount allocated to coverage pursuant to Section IX (B) (1), the following shall apply: In the event of a judgment, that portion of the judgment applicable to the **Insured Persons**, or for which the **Insured Persons** are jointly and severally liable with the **Company** or others, will be allocated to covered **Loss**. In the event of a settlement, 100% of the total amount due under the **Policy** for such **Claim** shall be allocated to the **Insured Persons**. Any remaining Limit of Liability, if any, will be allocated to pay for **Loss** arising from **Claims** against the **Company**, if such coverage is endorsed to the **Policy**.

The bankruptcy or insolvency of the **Company** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this **Policy** pursuant to this subsection.

This Endorsement shall be effective as of 12:01 a.m. on 03/26/2003.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.


Dane A. Shrallow
Secretary

Glenn Renwick
President

Form No. 7988 (06/02)        FDIC No. 21292

# PROGR ' E CASUALTY INSURAN ' MPANY

## GENERAL APPLICATION
### (Includes Directors & Officers Liability Insurance)
### MUST BE COMPLETED BY ALL APPLICANTS

#21292

FDIC # _21292 GA_    _00053 -AL_
_15923 FL_

## NOTE:  THE LIABILITY POLICIES TO WHICH THIS APPLICATION IS ATTACHED ARE FOR CLAIMS MADE COVERAGE - PLEASE READ YOUR LIABILITY POLICIES CAREFULLY

Name of Applicant _Peoples Community Bancshares, Inc_

Street Address _203 W. Crawford St_    City _Colquitt_    State _GA_    Zip Code _39837_

P.O. Box _218_    City _Colquitt_    State _GA_    Zip Code _39837_

Telephone Number _229-758-8822_    Fax Number _229-758-8940_

Website _none_    E-mail address of Representative _sbrockin@pcbcol.com_

Name and title of the Company representative who is authorized to receive notices from the Insurer on behalf of all persons and entities proposed for this insurance: _Rickey E. Stuckey, President_

It is agreed by the Applicant, that the particulars and statements contained in this Application (a copy of which will be attached to the Policy/Bond) and any material submitted therewith (which shall be on file with the Insurer and be deemed attached to the Policy/Bond as if physically attached to the Policy/Bond) are the basis of the Policy/Bond and are to be considered as incorporated in and constituting a part of this Policy/Bond.

## PART I - CURRENT INSURANCE INFORMATION

| Current Coverage | Insurance Carrier | Policy Limit | Retention (Deductible) | Annual Premium | Policy Period |
|---|---|---|---|---|---|
| Directors & Officers | Progressive | 2,000,000 | 40,000 | 12,993 | 1/10/02 - 1/10/03 |
| Lender Liability | | | | | |
| Fiduciary Liability | | | | | |
| IRA / Keogh Liability | | | | | |
| Agent Errors & Omissions | | | | | |
| Securities Entity Liability | | | | | |
| Entity Errors & Omissions | | | | | |
| Trust Errors & Omissions | | | | | |
| Employment Practices | Progressive | 2,000,000 | 40,000 | 7,868 | 1/10/02 - 1/10/03 |
| Financial Institution Bond | Progressive | 2,000,000 | 25,000 | | 8/10/02 - 8/10/03 |
| Combination Safe Deposit | Progressive | 350,000 | -0- | | 8/10/02 - 8/10/03 |
| General Liability | Southern Trust | 2,000,000 | -0- | | 11/23/02 - 11/23/03 |

Have there been any claims, potential claims, losses or potential losses that would have been covered under any of the above policies/bonds during the past 3 years? (If renewal applicant, within the past 12 months?) ☒ Yes ☐ No
_Financial Institution Bond Only See Claims Dept._

Has any carrier refused coverage, canceled or non-renewed any of the above policies/bonds? ☐ Yes ☒ No

**If Questions 1 or 2 are "Yes," provide details by attachment.**

Page 1 of 6.
Form No. 3066 (06/00)

RECEIVED

DEC 3 0 2002

PROGRESSIVE

1. Please tell us about the organization:

| Date(s) Established (Applicant and all subsidiaries) | | | | |
|---|---|---|---|---|
| The Applicant has a: | ✓ | Federal Charter | | State Charter |
| Deposits are insured by: | ✓ | FDIC | | Other |
| Type of Ownership: | ✓ | Stock Institution | | Mutual Institution |
| Employees (full and part-time): | 42 | # of Salaried / Exempt | 81 | # of Hourly / Non-Exempt |
| Number of: | 14 | full-service branches (including main office) | | |
| | 0 | limited facilities (accepts deposits only; no loans) | | |
| | 1 | non-banking facilities (DP centers, Loan Production Offices, etc.) Located in Colquitt GA | | |

**Stock Institutions Only:**                    Holding Company            Subsidiary Bank

2. a.  Number of shareholders:                         _331_                   _____

   b.  Total number of shares outstanding:              _604,682_               _____

   c.  Number of shares owned by directors, trustees
       or officers (directly or beneficially) :         _311,112_               _____

3. Does any person or entity own:

   a.  10% or more of the common stock of the Applicant (directly or beneficially)?          ☒ Yes  ☐ No

   b.  Debentures convertible to common stock which, if exercised, would result in a
       controlling interest of 10% or more of common stock?                                  ☐ Yes  ☒ No

4. Are all individuals or entities that own 10% or more of common stock represented on the board
   of directors or trustees?                                                                 ☒ Yes  ☐ No
   If "No," how is that person/entity's interest represented? _____

   _____

5. Have you completed during the past 3 years, or are you contemplating during the next 12 months, any of the following:
   If "Yes," attach a copy of the Prospectus, Circular or Placement Memorandum.
   a.  Public offering of securities:                                                         ☐ Yes  ☒ No
   b.  Private placement of securities:                                                       ☐ Yes  ☒ No

## PART III - SUBSIDIARIES

### Please list all subsidiaries of the Company here or by attachment:

| Subsidiary | Nature of Business | Parent Applicant | % Owned | Date Est. | Total Assets |
|---|---|---|---|---|---|
| Peoples Community Bank - GA | Commercial Bank | | 100 | | 116,155,000 |
| Peoples Community Bank - AL | " " | | 100 | | 166,772,000 |
| PCB - The Community Bank - FL | " " | | 100 | | 46,701.00 |
| | | | | | |
| | | | | | |

**IT IS UNDERSTOOD AND AGREED THAT COVERAGE WILL NOT BE PROVIDED FOR ANY
SUBSIDIARY UNLESS LISTED.**

1. Check all products and services that are currently offered, or that you contemplate offering within the next 12 months:

- ☐ Loan Servicing (for a Fee)
- ☒ Data Processing (for a Third Party) *only for our 3 Banks*
- ☐ Trust Services

- ☐ Investment Products (via a Third Party)
- ☐ Investment Products (via Bank Employees)
- ☒ Merchant Services or Credit Card Processing

- ☐ PC Banking
- ☐ Internet Banking (Transactional Website)
- ☐ Insurance Sales

- ☒ Debit Card Issuance
- ☐ Credit Card Issuance
- ☐ Other _____

2. If the Applicant or any subsidiary offers any of the above products or services, other than Trust Services, provide by attachment: 1) a detailed description of product or service; 2) approximate percentage of non-interest income attributed to this activity; and 3) details on any other insurance or indemnification that may be in place to protect the Applicant or its employees.

## PART V - MERGERS, ACQUISITIONS AND REORGANIZATIONS

1. Has any financial institution been merged into or acquired by the applicant or any of its subsidiaries within the last 3 years? **(If renewal applicant, during the past 12 months)**     ☐ Yes  ☒ No

2. Is the Applicant or any subsidiary presently involved in, or is it presently considering:

    a.  any merger, consolidation, acquisition, tender offer, divestment or sale of its stock in excess of 10% shares outstanding?     ☐ Yes  ☒ No

    b.  Conversion to Subchapter S Corporation:     ☐ Yes  ☒ No

3. If you are a mutual institution, are you considering converting to a stock institution, or reorganizing into a holding company structure, within the next 12 months?     ☒ NA   ☐ Yes  ☐ No

4. **If you answered "Yes" to Questions 1, 2 or 3 above, provide details by attachment.**

## PART VI - AUDIT INFORMATION

1. **Please attach a copy of your most recent audit report or annual report (if applicable) and include a copy of the most recent management letter and bank's response (if applicable).**

2. If the institution undergoes a full-scope audit, was the most recent opinion unqualified?   ☐ NA   ☒ Yes  ☐ No

3. Are internal and external audit reports submitted directly to the board of directors/trustees or to the audit committee?     ☒ Yes  ☐ No

4. Is the audit committee comprised only of outside directors or trustees?     ☒ Yes  ☐ No

5. Indicate the frequency of audit committee meetings: (weekly, monthly, etc.)  *monthly*

6. a.  Does the institution have a continuous internal audit program? **(If "No," proceed to next section)**   ☒ Yes  ☐ No

    b.  The internal audit function is performed by:     ☒ Bank Employee(s)   ☐ External Service

    c.  If the audit function is performed internally, provide the auditor's name and a brief summary of his/her qualifications (or attach resumes). If the function is performed externally, provide the name of the firm and frequency of audits (quarterly, monthly, etc.): *Michelle Patterson - resume attached*

    d.  If you have an internal auditor on staff, does he/she have operational responsibilities?     ☐ Yes  ☒ No

## PART VII - MANAGEMENT

1. List all loans to directors, trustees and officers of the Applicant or any subsidiary that are more than 30 days past due, classified or criticized by any regulatory agency: _None_

2. During the past 3 years, has any past or present director, trustee, officer or employee been the subject of a criminal investigation or been charged with a criminal act? **If "Yes," provide details by attachment.** ❑ Yes ☒ No

3. Indicate if there have been any changes in any of the following management positions during the past 3 years for any reason other than retirement or death: **(If renewal applicant, during the past 12 months)**

   ❑ Chairman of the Board       ❑ Chief Executive Officer       ❑ Senior Loan Officer

   ❑ Senior Operations Officer   ☒ Internal Auditor              ❑ President

   If " Yes," **provide details regarding departure and attach resumes of new hires:** _Jen Rogers previous internal auditor, was transferred to our Data Processing Dept, and Michelle Patterson was hired to fill that position. < Resume Attached >_

4. Has any director or trustee missed more than 25% of board meetings within the past 12 months?

   ❑ Yes ☒ No

   If "Yes," provide name, percentage missed and reasons: _____

## PART VIII - REGULATORY INFORMATION

1. a. Provide the total dollar amount of classified assets as of the latest Regulatory Examination: _Attached_

   Substandard $_____       Doubtful   $_____       Loss  $_____

   b. Regulatory Agency and Date of Examination _____

2. As of the latest regulatory exam, was the institution assigned a CAMEL or MACRO rating of "1" or "2"? ☒ Yes ❑ No

3. Have all criticisms noted in the last regulatory exam report been addressed by the board of directors/trustees? **If "No," provide details by attachment.** ☒ Yes ❑ No

4. During the past 3 years, has the Applicant or any subsidiary been placed under or does management anticipate that the Applicant or any subsidiary will be placed under any of the following regulatory orders, agreements or actions; or has management been made aware of any of the following conditions: **(Check all that apply)**

   | **Type of Regulatory Order:** | **Condition Warranting Attention:** |
   |---|---|
   | ☒ Board Resolution _Alabama   3/00_ ❑ | Problems involving loans to directors, trustees, or officers |
   | ☒ Memorandum of Understanding _see_ ❑ | Concentrations of credit which warrant reduction or correction |
   | ❑ Formal Written Agreement _attached_ ❑ | Significant violations of law |
   | ❑ Commitment Letter ❑ | Conflict of interest transactions |
   | ☒ Cease & Desist _GA+AL in 2000 Lifted in 2001_ ❑ | Extensions of credit exceeding the legal lending limit |
   | ❑ Other (specify)_____ ❑ | Substandard, Doubtful, or Loss classifications, exceeding 40% of capital |

**If the institution is under any type of regulatory order, agreement or action, provide details by attachment, including the current status of such order, agreement or action.**

## Renewal Applicants Only:

1. Are there any liability claims, potential claims and/or Financial Institution Bond losses or potential losses that have <u>not</u> been reported to Progressive?    **If "Yes," provide details by attachment.**    ☐ Yes  ☒ No

## New Applicants Only:

2. Have there been or are there now pending, any lawsuits against any past or present director, trustee, officer or employee resulting from their activities as director, trustee, officer, or employee of the Company?    ☐ Yes  ☐ No

3. During the past 3 years have there been or are there now pending, any lawsuits against the Applicant or any subsidiary of the Applicant?    ☐ Yes  ☐ No

4. Does the undersigned or any director, trustee or officer have any knowledge of any fact, circumstance or situation involving the Applicant, any subsidiary of the Applicant or any past or present director, trustee, officer or employee, which they reasonably should expect could give rise to any future claim?    ☐ Yes  ☐ No

5. If you answered "Yes" to any of the Questions above, provide details here or by attachment.

_____

_____

_____

_____

6. List all Financial Institution Bond losses, potential losses, claims or potential claims sustained during the past 3 years, whether reimbursed or not:

| Date of Loss | Type of Loss | Amount of Loss | Amount Recovered (other than Insurance) | Amount of Loss Pending |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**PERTAINING TO QUESTIONS 2 AND 3, IT IS UNDERSTOOD AND AGREED THAT ANY CLAIM ARISING FROM ANY PRIOR OR PENDING LITIGATION IS EXCLUDED FROM COVERAGE. PERTAINING TO QUESTION 4, IT IS FURTHER UNDERSTOOD AND AGREED THAT IF KNOWLEDGE OF ANY FACT, CIRCUMSTANCE OR SITUATION EXISTS, ANY CLAIM OR ACTION SUBSEQUENTLY ARISING THEREFROM SHALL BE EXCLUDED FROM COVERAGE.**

The undersigned Chief Executive Officer (or other Senior Officer if the Chief Executive Officer is also the Chairman of the Board) and Chairman of the Board declare that, to the best of their knowledge and belief, the statements in this Application, and any additional material submitted are true and complete, and that reasonable efforts have been made to obtain sufficient information from each and every individual or entity proposed for this insurance to facilitate the proper and accurate completion of this Application.

The signing of this Application does not bind the undersigned to purchase the insurance and accepting this Application does not bind the Underwriter to complete the insurance or to issue any particular Policy/Bond. If a Policy/Bond is issued, it is understood and agreed that the Underwriter relied upon this Application and any additional material submitted in issuing each such Policy/Bond and any Endorsements thereto. The undersigned further agrees that if the statements in this Application or any other materials submitted change materially before the effective date of any proposed Policy/Bond, which would render this Application inaccurate or incomplete, notice of such change will be reported in writing to the Underwriter immediately.

FRAUD WARNING:   In Arkansas, Colorado, District of Columbia, Florida, Kentucky, Louisiana, Maine, Minnesota, New Jersey, New Mexico, Ohio, Oklahoma, and Pennsylvania, any person who knowingly and with intent to defraud any insurance company, or other person, files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime. In New York, such person shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation.  In Pennsylvania, such person will be subject to criminal and civil penalties.  In District of Columbia and Maine, such person shall be subject to penalties which include imprisonment, fines and denial of insurance benefits. In Virginia, it is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purposes of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

By _Rickey E. Stuckey_____  Date _12/23/02_  Title _Pres + CEO_
Signature of Chief Executive Officer (or other Senior Officer if the Chief Executive Officer is also the Chairman of the Board)

By _____X. Merritt_____  Date _12-28-02_
Signature of the Chairman of the Board


A BOND AND/OR POLICY CANNOT BE ISSUED UNLESS THE APPLICATION IS PROPERLY SIGNED AND DATED BY TWO INDIVIDUALS.

                _Randy Clenney_
Agent Name: _The Clenney Agency, Inc_ License Number _351088_

Submit Application to:
PROGRESSIVE CASUALTY INSURANCE COMPANY

300 North Commons Blvd., PLG-T62
Mayfield Village, OH  44143
Telephone: 800-274-5222      Fax: 800-456-6590

Part VIII, q. 4, Page 4  General Application

Peoples Community Bancshares, Inc. was placed under a Memorandum of Understanding in August, 2002.   This was placed on the EDP department due to the loss of images through our Bisys software in April, 2001.  We are currently in the process of retrieving these lost images and it appears that all but approximately 1% of all the items will be recovered.


Peoples Community Bank, Alabama, was placed under a Memorandum of Understanding in May, 2002 by the FDIC safety and soundness examiners due to their loan portfolio quality.

## LOAN CLASSIFICATIONS FROM REGULATORY EXAMINATIONS

### PEOPLES COMMUNITY BANK, GEORGIA - Last Examination as of 1/22/02

|  | $(000) Substandard | $(000) Doubtful | $(000) Loss |
|---|---|---|---|
| LOANS | 2,426 | 97 | 104 |
| SECURITIES | 0 | 0 | 0 |
| OTHER ASSETS | 0 | 0 | 0 |
| TOTAL | 2,426 | 97 | 104 |

All Loss has been charged off.

### PEOPLES COMMUNITY BANK, ALABAMA - Last Examination as of 9/30/01

| LOANS | 11,415 | 107 | 230 |
|---|---|---|---|
| SECURITIES | 0 | 0 | 0 |
| OTHER ASSETS | 1,737 | 0 | 110 |
| TOTAL | 13,152 | 107 | 340 |

All Loss has been charged off.

### PCB, THE COMMUNITY BANK, FLORIDA - Last Examination as of 9/30/01

| LOANS | 230 | 21 | 115 |
|---|---|---|---|
| SECURITIES | 0 | 0 | 0 |
| OTHER ASSETS | 0 | 0 | 0 |
| TOTAL | 230 | 21 | 115 |

All Loss has been charged off.

# MICHELE SHIVER LOVE, C.P.A.
## 204 Darlington Circle
## Dothan, Alabama 36301
## Phone: (334) 792-1621

---

## SUMMARY OF QUALIFICATIONS

Certified Public Accountant and bank examination professional with over ten years of experience in financial institution regulation and examination. Experienced in compliance, safety and soundness, and trust department examinations. Excellent communication and organizational skills. Examined banks and thrifts ranging in size from $5 million to over $10 billion in total assets.

## EXPERIENCE

- Plan and conduct compliance, fair lending, and Community Reinvestment examinations of FDIC-insured financial institutions in Alabama, Florida, and Georgia.
- Consult with financial institutions to establish and refine compliance, fair lending, and Community Reinvestment programs.
- Participate in the development of Bank Board Resolutions, Memorandums of Understanding, and Cease and Desist Orders for "problem" banks.
- Conduct fair lending and consumer complaint investigations.
- Prepare written examination reports, Community Reinvestment performance evaluations, and other written reports.
- Make oral presentations to bank officers, boards of directors, and FDIC staff.
- Provide on-the-job training to junior examiners.
- Assist in the development of a training program for implementation of electronic data conversion software.
- Lead training seminars on data conversion software with co-trainers, instructed 50 examiners on examination software in 1998.

- Train 60 examiners and regional office staff on consumer protection regulations governing insurance sales and nondeposit product examination procedures in 2001.
- Prepared written summary of nonbank agricultural lending competition issues which was featured in the August 1998 issue of *Bank Trends*, a publication of the FDIC Division of Insurance.

EXAMINER                                                June 1991 to October 1995

Division of Supervision
Birmingham, Alabama

- Coordinated and conducted safety and soundness examinations.
- Analyzed banks' financial position, earnings performance, capital adequacy, and asset/liability management.
- Conducted loan portfolio reviews and individual and corporate financial statement analysis.
- Reviewed and evaluated banks' administration, compliance with banking laws and accuracy of financial and informational reports and condition reports filed with regulatory authorities.
- Wrote reports summarizing examination findings and made recommendations to bank management and directors.
- Exercised delegated authority over regulatory compliance.
- Conducted bank trust department examinations.

## EDUCATION

Post-baccalaureate Accounting Courses, 50 quarter hours
Troy State University – Dothan, Dothan, Alabama
1997-1999

Bachelor of Science, Major: Finance
Graduated summa cum laude, 1991
Troy State University, Troy, Alabama

## PROFESSIONAL CERTIFICATIONS AND ASSOCIATIONS

Certified Public Accountant (Alabama), Certificate Number 8899
Member, Alabama Society of Certified Public Accountants

# PERSONAL COMPUTER SKILLS

Excel
Access
CRA Wiz
Word

# PROFESSIONAL TRAINING

| | |
|---|---|
| Part 343 and Nondeposit Product Instructor Training | 2001 |
| CRA Wiz Training | 2001 |
| Diversity Training | 2000 |
| Management Excellence Program – Team Leader School | 2000 |
| Advanced Consumer Protection School | 2000 |
| Fair Lending Examination Procedures Workshop | 2000 |
| Introduction to Interagency Fair Lending Examination Procedures | 1999 |
| Electronic Banking Training | 1999 |
| Data Conversion Module Instructor Training | 1998 |
| Large Institution Community Reinvestment Act Training Conference | 1997 |
| Advanced Consumer Affairs School | 1997 |
| Consumer Protection School | 1996 |
| Third National Conference on Electronic Branch Management | 1996 |
| Effective Writing Skills | 1996 |
| Community Reinvestment Act Conference for Examiners | 1995 |
| White Collar Crime | 1995 |
| Commissioned Examiner Seminar | 1992 |
| Real Estate Appraisal School | 1995 |
| Trust Examination School | 1994 |
| Management Workshop | 1994 |
| Examination Management | 1993 |
| Loan Analysis | 1992 |
| Financial Institution Analysis | 1992 |
| Examiner I School | 1991 |



# PEOPLES
# COMMUNITY
# BANCSHARES, INC.

Post Office Box 218
Colquitt, Georgia 31737
Telephone: (229) 758-5511


December 27, 2002

Randy Clenney
Clenney Insurance Agency
Colquitt, Georgia 39837

Attn: Randy

Let this letter serve as notification of possible losses which Peoples
Community Bank, Columbia, Alabama will sustain due to actions taken by
the City President of our Eufaula, Alabama location, Gloria Garrett Helms.
This losses will result in Ms. Helm's violation of official loan policy. She
made unauthorized loans, made unauthorized advances against loans and
released collateral on loans with the proper approval of loan committee. This
was in violation of loan policy and bank policy.

Please notify our blanket bond carrier, Progressive, and any other carrier that
may cover these possible losses. If you need any further information, please
call me at 229-758-8822.

Sincerely,

*Pam Pickle*

Pam Pickle
Accounting Officer

RECEIVED
DEC 3 0 2002

**EXHIBIT**

*B*

property leaves the bank until delivered to the addressee.

### Transit Cash Letter Insurance
Covers loss of cash letter items in transit for collection or to a clearing house of which the insured bank is a member. It also includes costs for reproducing cash letter items. Generally, such policies do not cover items sent by registered mail or air express, or losses due to dishonest acts of employees.

### Valuable Papers and Destruction of Records Policy
Covers the cost of reproducing records damaged or destroyed. It also provides the cost of research needed to develop the facts required to replace books of accounts and records.

## Other Desirable Insurance Coverage
The banking industry customarily utilizes forms of insurance for which the blanket bond, along with related policies, endorsements and special coverage previously noted, does not provide coverage or provides insufficient protection. Banks may also need many of the same types of insurance required by any business or individual. The following is a brief description of some of those types of coverage.

### Liability Insurance

#### Directors and Officers Liability
These policies provide for the indemnification of directors and officers against legal and other expenses incurred in defending lawsuits brought against them by reason of the performance of their official duties. They protect, under two insuring clauses, against the expense of defending suits alleging director or officer misconduct and against damages that may be awarded. Clause (A) provides coverage directly to the directors and officers for loss resulting from claims made against them for their wrongful acts. Clause (B) reimburses a corporation for its loss when the corporation indemnifies its directors and officers for claims against them. An additional, optional coverage provides protection for the corporation and its own liability. This coverage is written at a minimum of $1 million (deductible $10,000 to $20,000) with the insurance company paying a portion of any claim over the deductible amount. This insurance does not cover criminal or dishonest acts, situations when the involved person obtained personal gain, or when a conflict of interest was apparent.

#### General Liability
Covers the bank from possible losses arising from a variety of occurrences. Typically, general liability insurance provides coverage against specified hazards, such as personal injury, medical payments, property damage, or other specific risks that may result in or create exposure to a suit for damages against the bank. Where offered, "comprehensive" general liability insurance covers all risks, except specific exclusions.

#### Automobile Liability and Physical Property Damage
Protects against property and liability losses arising from injury or death when a bank owned, rented, or repossessed vehicle is involved. Non ownership liability insurance should be considered if officers or employees use their own vehicles for bank business.

#### Umbrella Liability
Provides excess coverage over and above existing liability policies, as well as basic coverage for most known risks not covered by existing liability insurance.

### Fixed Assets/Property Physical Damage
Adequate insurance should be maintained to cover loss or damage of the bank's fixed assets.

#### Fire or Extended Coverage
This insurance covers all loss as a direct result of a fire, including damage from smoke or water and chemicals used to extinguish the fire. Covering the building's contents for fire damage is additional, but often is written in combination with the policy on the building and permanent fixtures. Extended coverage indemnifies against losses from windstorm, hail, explosion, riot, civil commotion, aircraft, vehicles, and smoke damage. Damage caused by rising water or the malfunction of a steam boiler is usually not included. Most fire insurance policies contain "coinsurance" clauses, meaning insurance coverage must be maintained at a fixed proportion of the replacement value of the building. If a bank fails to maintain the required relationship of protection, all losses will be reimbursed at the lower ratio of the